Filed 2/28/25  Thompson v. Moon CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MICHAEL THOMPSON et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>DANIEL MOON et al.,<br><br>Defendants and Respondents. | B322777<br><br>(Los Angeles County<br>Super. Ct. No. 19STCV12391) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael P. Linfield, Judge.  Affirmed.

Levi Reuben Uku for Plaintiffs and Appellants.

Decker Law, James Decker, Griffin Schindler for Defendants and Respondents.

## INTRODUCTION

Michael Thompson was the sole owner of 4 River Investments, LLC (collectively, plaintiffs) and Daniel Moon was the sole owner of Green Dream Collective Corp. (collectively, defendants). In April 2018, plaintiffs contracted with defendants to purchase "Green Dream," a marijuana business in Los Angeles owned by defendants. Plaintiffs asserted that defendants defrauded plaintiffs and breached the sale agreement based on theories that shifted over the course of the case. Initially, plaintiffs alleged that the fraud and breach related to defendants' collection of rent money from plaintiffs on a sublease while defendants failed to pay rent to the landlord, and defendants' failure to secure a ten-year extension of the lease for the Green Dream premises. At trial, plaintiffs alleged in part that the sale agreement required defendants to convey to plaintiffs a valid marijuana dispensary retail license, which defendants did not do. After a one-day bench trial, the court found that plaintiffs had not proven their claims and entered judgment for defendants.

On appeal, plaintiffs assert that the Green Dream sale agreement implied that a valid retail license was included in the sale. Plaintiffs also argue that defendants had certain obligations under the sublease, and that the court erroneously excluded important evidence. We find no error, and therefore affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Complaint

Plaintiffs filed their initial complaint in April 2019. In the operative first amended complaint, filed in June 2019, plaintiffs alleged three causes of action: breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud.

2

Plaintiffs alleged that in negotiating the sale of Green Dream, Moon represented that he "had a wonderful personal relationship with the landlord of the premises wherein Green Dream operates," and Moon "personally guaranteed the performance of the lease on Green Dream behalf and [*sic*] the Landlord at 1600 S. Main Street, Los Angeles, California." Moon also represented that he "was going to obtain the extension of lease of the said premises from the landlord for 10 years," and that "the landlord needs $20,000 from the sale of the said business to be deposited by him Moon as an option for the landlord to extend the lease for 10-years [*sic*]." Moon prevented Thompson from meeting the landlord in person by telling him that the landlord "did not like black people." Defendants "at all times relevant knew that the lease agreement for the said premises would not be renewed or extended by the landlord, yet made assurances and material representations to the Plaintiffs for the sole purpose of inducing reliance."

The parties executed a sale agreement in April 2018, and plaintiffs deposited $83,265 into an escrow account. Plaintiffs "understood [Moon's] promises as stated in the purchase agreement . . . to include obtaining the landlord's consent to extend the lease agreement for 10-years."

After the sale was completed in April 2018, Moon "failed or refused to cooperate with the Plaintiff[s] in making a good faith effort on Plaintiffs' behalf" to extend the lease. Moon had "demanded [an] additional $20,000 from Plaintiff Thompson to be paid to the Landlord on Plaintiffs' behalf[.] Thompson gave Moon the $20,000.00 . . . but Moon embezzled the said $20,000.00 and failed to pay the landlord the rent arrears." Thompson later learned that Moon's representation of an "excellent relationship"

3

with the landlord was false, and "the landlord's relationship with [Moon] was irretrievably broken and indeed, the Landlord had filed an action for unlawful detainer" against defendants. Thompson attempted to directly pay the rent owed to the landlord, but the landlord refused to accept it.

Plaintiffs alleged that defendants "breached the agreement between the parties when they failed to timely honor their obligation and duty to obtain the lease extension as required under the agreement," and as a result, "plaintiffs suffered substantial and material damages in [an] amount in excess of $800,000.00." Plaintiffs further alleged they had to pay attorney fees defending an unlawful detainer action, and that they were "damaged by the entry of unlawful detainer judgment against the Plaintiff [*sic*]." Plaintiffs sought actual and punitive damages, attorney fees, and costs.

The case proceeded to trial in June 2022.

**B.    Trial**

1.    *Thompson*

Thompson testified that he had worked in the cannabis business since 1996 in a variety of capacities, including growing, working in a dispensary, transporting product around the state, working as security, and helping with licensing and paperwork. Thompson testified that a retail cannabis business must have a retail dispensary license issued by the relevant city, and that a license is site-specific.

Thompson testified that Green Dream was "basically out of business" when he first encountered it, with "no product on hand" and "no equipment." Moon owned it, and Thompson "bought into" it. Thompson testified that based on Moon's representations, Thompson understood that he was buying Green

4

Dream along with "[t]he marijuana dispensary license for the location at 1600 Main" Street in Los Angeles. Thompson paid $65,000 for Green Dream. The parties executed a "business sale agreement" on April 17, 2018.[1] Thompson stated that he paid the amount in cash into an escrow account. He testified that he would not have bought the business if he thought it did not have a valid license.

Thompson testified that he expected to receive Green Dream's retail license "through escrow," but he never received it. When Thompson tried to find information about Green Dream's license, he discovered that one had never been issued in Los Angeles. Rather, Green Dream had a license issued in Long Beach.

Thompson also testified that he paid defendants $17,245.09 in addition to the sale price for Green Dream, because Moon "said he was going to pay the rent up for a couple of months, first, last, security or something. I don't know what he was talking about." Moon told Thompson that he could get the property lease extended for ten years, because Moon and the landlord, Daniel Shilacum, were good friends. Moon also told Thompson that Shilacum "didn't like blacks" so he "didn't want to do business

---

[1] The agreement was admitted as a trial exhibit. As defendants correctly point out, none of the trial exhibits have been submitted to this court. (See Cal. Rules of Court, rule 8.224(a)(1), (b)(2) [the party wanting a reviewing court to review exhibits must serve and file a notice, and if the exhibits are in the party's possession, transmit the exhibits to the reviewing court].) Plaintiffs did not address this contention in their reply brief. Because doing so does not prejudice defendants, we will presume for purposes of this appeal that the sale agreement included in the record with plaintiffs' trial brief is the relevant agreement.

with me," and therefore Thompson paid rent by "giving it to Mr. Moon."

Thompson said that he learned in September 2018 that there was an unlawful detainer lawsuit relating to the property, and therefore realized that Moon had not paid the rent. Thompson tried to pay $18,000 directly to Shilacum, but Shilacum refused to accept it. Thompson hired an attorney to respond in the unlawful detainer case. Thompson testified that his attorney's actions "slowed" the unlawful detainer case, but eventually he received a sheriff's notice to vacate the premises. Before Thompson could fully vacate the premises, Moon placed a padlock on the gate, locking Thompson out. Thompson cut the lock off.

Thompson testified that after expenses, Green Dream was making $12,000-$13,000 per month, but "we were only there a couple of months." When asked how long specifically, Thompson said, "five or six – even seven, eight months."

On cross-examination, defense counsel asked Thompson about the following language in the sale agreement: "Seller's business is as follows: [¶] A marijuana dispensary, with all business fixtures and product as well as the right to the name and all legal documents business licenses and tax certificates and other documentation to legally apply for a license to operate a dispensary." Thompson said that Moon "was supposed to give me the license. That was the deal." Thompson said that a retail license was implied in the agreement, because the sale was for a "marijuana dispensary," which necessarily requires a license.

Referring to escrow documents, defense counsel noted that the additional $17,245.09 Thompson paid included a security deposit, rent deposit, sales tax on fixtures, and escrow charges.

6

Thompson agreed that the documents said as much, but said that he was "under the impression it was for some type of rent."

Defense counsel asked about unpaid rent listed on the unlawful detainer notice, which noted a balance due for July 2018, and unpaid rents for August and September 2018. Thompson said the rents were actually paid: "We physically gave the money. Every month, the first of the month, we paid. We did. So if it wasn't paid, they didn't pay it." The judge asked Thompson if he had receipts for the money he gave to Moon. Thompson said he "paid them in cash," and got no receipts because "I trusted him."

Defense counsel pointed to a portion of the escrow closing instructions, which stated that the "buyer has received a sublease from [Moon] without landlord's consent outside of escrow instead of obtaining an assignment of lease from landlord directly." Thompson said he paid the approximately $17,000 for rent, and as for the escrow instructions, "I don't know what you're talking about now with this."

On redirect, Thompson confirmed that he was the sublessee, Moon was the sublessor, and therefore he paid rent to Moon in cash.

2. *Moon*

Plaintiffs' counsel called Moon to testify. Moon stated that he owned Green Dream, a "marijuana dispensary," that he operated from 2017 to 2018. He testified that Green Dream had a "retail corporation license" but not a marijuana dispensary license. Moon said he did not represent to plaintiffs that Green Dream had a marijuana retail license. Moon sold the business to Thompson, and subleased the property to him. Moon testified that he had a one-year lease beginning in September 2017, which

7

he told Thompson about at the time of the sale. Moon said "a friend" would "collect the money, two months, and then he pay [*sic*] the rent to the landlord." Moon did not have a good relationship with the landlord. He did not recall whether he received notice of the unlawful detainer action.

After plaintiffs rested, defense counsel called Moon as a witness. Moon testified that he operated Green Dream at its location in Los Angeles for about seven months. He testified that the business was profitable, but when asked why he decided to sell it, he said "business wasn't – you know, I just want to sell it. I decide to sell it [*sic*]." Moon met Thompson twice; the first time was about two months before selling the business, and the second time was at the escrow office. Moon testified again that he had a one-year lease for Green Dream, and he never represented that he could extend the lease for ten years. The sublease with plaintiffs was from the time of the sale to the end of Moon's lease, about five or six months. Moon also testified that he expected plaintiffs to pay rent directly to the landlord. He testified that he received no money from plaintiffs after the sale in April.

On cross-examination, Moon testified that when he signed his lease, he paid a security deposit plus first and last months' rent. The lease was not terminated upon the sale of the business. Moon felt that $65,000 was a fair price for the business. Moon agreed that the landlord never consented to the sublease agreement.

### 3. *Davis*

Witness James Davis, called by the defense, testified that he worked for Green Dream when Thompson owned it. Davis managed the business, including making sure the rent was paid. Davis could not recall exact dates, but estimated that he

delivered Green Dream's rent "[t]hree to four times," and he was "still paying rent late into summer." Rent was paid to the landlord in cash, somewhere in the ballpark of $7,000 per month. Davis was later terminated.

On cross-examination, Davis testified that before he worked with Thompson, Davis and Moon had worked together for about three years on wholesale marijuana sales to dispensaries. Moon introduced Davis to Thompson. Davis testified that Thompson's partner Doug let Davis go several months after Thompson bought Green Dream. Plaintiffs' counsel called Thompson again to rebut this timeline; Thompson testified that he fired Davis a week or two after buying Green Dream.

4. *Closing arguments*

Plaintiffs' counsel argued in closing that defendants sold plaintiffs a "dispensary," but because it never had a license, it was "a worthless business" and an "illegal business." Thompson expected Moon to deliver a license at the end of escrow. The court interrupted to ask why Thompson, who had been in the business for 25 years, paid $80,000 "on someone's word" without ensuring the documents were in order. Plaintiffs' counsel said that Thompson "got taken" and he "fell for" Moon's false representations. Plaintiffs' counsel said that "escrow and Mr. Moon promised that once the payment was made, . . . they're going to prepare a booklet that would have everything in it." The court asked, "[W]here in the escrow does it say that after Mr. Thompson pays the money, he will get a booklet with all of these materials?" Plaintiffs' counsel said, "Of course that is not in the escrow," but Thompson testified that Moon represented that such information would be provided.

9

Plaintiffs' counsel argued that Moon breached the sale agreement by selling a business that had no license. The court asked about the provision in the sale agreement stating that the seller would provide the documentation "to legally apply for a license" for a dispensary. Plaintiffs' counsel asserted that language could reference the need for further inspection by the city to "approve the transfer."

Defense counsel argued there was insufficient evidence to support plaintiffs' causes of action. He stated that the parties reached an agreement about the sale, the escrow period ended, and Thompson took over the business. Moon left the business completely, and an unlawful detainer action was filed long after Moon left. The court noted that Moon had an ongoing lease, and therefore had "an ongoing or continuing obligation to pay the rent directly to the landlord." Defense counsel agreed that "Mr. Moon remained on the lease, but there is no obligation for Mr. Moon to pay out of pocket" or to pay rent "while Mr. Thompson operates the business for himself."

The court noted that the sale agreement said there was an assignment of the lease, but there was in fact no assignment of the lease, so "is that a breach of contract?" Defense counsel said no, because the escrow instructions and Thompson's agreement to take the property showed that the parties agreed there would be no assignment of the lease.

In his rebuttal argument, plaintiffs' counsel asserted that Moon, "being at the tail [end] of his obligation, decided not to perform" by not paying rent for August.

5. *Verdict*

The court delivered a verdict from the bench. The court summarized the evidence, and said, "I will tell you the court

10

believes neither the plaintiff nor defendant. I think both were being casual on the truth." The court cited Thompson's claim that he did not understand why he was paying an extra $17,000 during the sale, and said, "I don't believe this. Mr. Thompson is an experienced business person. He's been doing this work for 25, 27 years, according to his own testimony. And I don't think that someone is given [*sic*] an extra $17,000 in escrow and just decides, 'Oh, well, I don't know what it's about, but I'm going to pay it anyway." The court was also skeptical about Thompson's claim that he paid the rent in cash with no receipts, because if Thompson "was paying $7500 a month rent, he would get a receipt from the landlord" to protect against an unlawful detainer action or eviction.

The court continued, "I also don't believe Mr. Moon completely. He says that [Thompson] was to pay the rent directly to the landlord," but the escrow instructions "says the landlord's unaware of the sublease." "So it strikes me as a little strange that Mr. Moon would say that [Thompson] is supposed to pay the landlord directly." The court added, "Also, Mr. Moon is either very cagey or forgetful as to why he decided to sell the business." The court did not believe Moon's testimony that he did not recall whether he received the unlawful detainer paperwork, because "[i]f you're being evicted, you remember." The court noted that Davis's testimony about paying rent into late summer corresponded with the unlawful detainer's notice of unpaid rent in August and September.

The court stated that the burden was on plaintiffs to prove their causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud. The court continued, "The court believes simply that plaintiff hasn't [*sic*]

11

proven their case." Neither side was "truthful," but "the burden of proof is on the plaintiff, and I don't believe the plaintiff has presented any evidence that's credible" to support the three causes of action. So the court stated that it would "enter judgment for the defendant and against the plaintiff."

Defendants prepared a proposed judgment, which the court signed and entered on July 13, 2022. Plaintiffs timely appealed.

## DISCUSSION

On appeal, plaintiffs assert three arguments: first, the court incorrectly interpreted the sale agreement; second, the defendants had certain obligations under the sublease; and third, the court erred in excluding Exhibit 14, a copy of a notice to vacate. We consider each argument in turn. "[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.)

## A. Interpretation of the sale agreement

Plaintiffs argue that the trial court erred as a matter of law by awarding judgment to defendants "based on [an] incorrect and erroneous interpretation of the agreement between the parties." They assert that the "language of the [sale] Agreement and undisputed extrinsic evidence before the court show the mutual understanding that a License would be conveyed to [plaintiffs] with the purchase of Green Dream." They contend the trial court interpreted the sale agreement incorrectly on this matter, because the court failed to "determine the intent of the parties, or whether the contract is reasonably susceptible to . . . competing

12

interpretations." Plaintiffs also contend that defendants "procured the contract by fraud and misrepresentation."

Defendants correctly point out that the lack of a retail dispensary license was not the basis of plaintiffs' complaint. Rather, the three causes of action in the first amended complaint are based on an alleged breach of Moon's promise to get the landlord to extend the lease for ten years and Moon's alleged failure to pay rent. Generally, a court may not award a plaintiff relief on an issue not included in the pleadings. (See, e.g. *McMillin v. Eare* (2021) 70 Cal.App.5th 893, 913.) Plaintiffs did not move to amend the complaint to include such a claim. (See Code Civ. Proc., § 576.) However, because the lack of a dispensary license was addressed at trial, and defendants will not be prejudiced by this court considering the issue on the merits, we address plaintiffs' argument.

"'The interpretation of a contract is a judicial function. [Citation.] In engaging in this function, the trial court "give[s] effect to the mutual intention of the parties as it existed" at the time the contract was executed. [Citation.] Ordinarily, the objective intent of the contracting parties is a legal question determined solely by reference to the contract's terms." (*Brown v. Goldstein* (2019) 34 Cal.App.5th 418, 432.) "'The court generally may not consider extrinsic evidence of any prior agreement or contemporaneous oral agreement to vary or contradict the clear and unambiguous terms of a written, integrated contract. [Citations.] Extrinsic evidence is admissible, however, to interpret an agreement when a material term is ambiguous.'" (*Ibid.*)

"On appeal, a 'trial court's ruling on the threshold determination of "ambiguity" (i.e., whether the proffered evidence

13

is relevant to prove a meaning to which the language is reasonably susceptible) is a question of law, not of fact. [Citation.] Thus[,] the threshold determination of ambiguity is subject to independent review.'" (*Brown v. Goldstein, supra*, 34 Cal.App.5th at p. 433.)

In the sale agreement, Green Dream was represented as follows: "A marijuana dispensary, with all business fixtures and product as well as the right to the name and all legal documents business licenses and tax certificates and other documentation to legally apply for a license to operate a dispensary."

Plaintiffs argue this "representation that the business was up-to-date with legal documentation implies that Green Dream was a licensed marijuana dispensary." They also assert that the "mere recital of Green Dream as a marijuana dispensary presupposes licensure," since a dispensary cannot be legally operated without a license.

We disagree. The statement that Green Dream's documentation would allow the buyer to "legally apply for a license to operate a dispensary" makes clear that no license was included in the sale, either because Green Dream had no active license at the time of the sale or because the active license would not transfer to a new owner. Because the language of the contract demonstrates that no retail license is included in the sale, there is no need to consider extrinsic evidence about the parties' understanding.

Plaintiffs also argue that the "statutory underpinning of the licensing regime does not provide that a party could lend proxy documentation to an applicant for a License." They further assert that defendants "have not demonstrated that they possessed any such documents. One cannot give that, which they

14

do not have [*sic*]."  Plaintiffs cite no authority regarding what documentation is required for a license.  Furthermore, no evidence was proffered regarding what documentation or licenses were or were not conveyed as part of the sale.  Without any legal authority or supporting evidence, this contention does not support a finding of error.

**B.      Defendants' obligations under the sublease**

Plaintiffs also assert that "the sublease created obligation [*sic*] on [defendants] to defend [plaintiffs] against eviction by the landlord."  They argue that the trial court "misdirected itself when it found that" plaintiffs' nonpayment of rent "under the purported sublease was [a] proper ground for eviction by the landlord."  Plaintiffs also assert that Davis collected the rent and paid the landlord, but after Davis was dismissed, defendants "did not demand or receive or appoint any other person to collect the rent," so "the departure of Mr. Davis[ ] frustrated [plaintiffs'] ability to pay rent under the contract."

Again, defendants correctly point out that these arguments were not asserted in plaintiffs' complaint.  In addition, these issues were not litigated in the trial court.  The argument has therefore been forfeited. (See, e.g., *Wu v. Public Employment Relations Board* (2022) 87 Cal.App.5th 715, 724 ["'a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court'"].)

Moreover, no sublease is included in the appellate record. (See fn. 1, *supra.*)  Thus, even if we were inclined to consider plaintiffs' arguments on the merits, it would be impossible to determine the parties' duties under that agreement.  In addition, plaintiffs' argument misrepresents the trial court's ruling; the

15

court did not find that plaintiffs' nonpayment of rent was a "proper ground for eviction." The court did not make any findings regarding eviction.[2]

Thus, because the contention has been forfeited and plaintiffs have not pointed to evidence in the record to support their argument, plaintiffs have not demonstrated that the trial court erred with respect to defendants' duties under the sublease.

## C. Exclusion of Exhibit 14

During Thompson's testimony in the morning session of the trial, plaintiffs' counsel sought to introduce Exhibit 14, which he described as "the notice to vacate." Defense counsel objected because the document was "not fully legible." The court sustained the objection, stating, "Normally I would admit a notice to vacate if the foundation was laid, but I just can't read this. Quite honestly, it's not legible in the court's file. I can't read what it says." Plaintiffs' counsel asked to submit an electronic copy, and the court agreed, saying, "If you get an electronic copy in today," "we'll see what the electronic copy says." The court noted that the judicial assistant cannot enter an electronic copy, "So if you need to email something and print it out, by all means . . . . And then come back to the court, and we'll substitute a better copy for Exhibit 14 and then see if there's an objection." The record includes no additional discussion about this exhibit.

---

[2] Plaintiffs twice sought judicial notice of certain documents from an unlawful detainer action, but stated that the documents had not been presented to the trial court. We denied both requests. "'Reviewing courts generally do not take judicial notice of evidence not presented to the trial court' absent exceptional circumstances" (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379 fn. 2), and no such circumstances were presented in plaintiffs' request.

16

Plaintiffs now argue that the trial court "committed prejudicial error when it rejected the Exhibit on the ground solely that it was not *fully* legible," because the document was sufficiently "identifiable." Although "the trial court provided [plaintiffs an] opportunity to cure the perceived defect," "the task was virtually insurmountable" because the trial was completed in a single day. Plaintiffs argue that the court's erroneous exclusion prevented it from proving fraud, because Exhibit 14 would have demonstrated that defendants "had no right or interest in the premises" at the time they sold it. "Trial court rulings on the admissibility of evidence . . . are generally reviewed for abuse of discretion." (*Pannu v. Land Rover North America, Inc*. (2011) 191 Cal.App.4th 1298, 1317.)

Plaintiffs' argument is somewhat difficult to interpret, because Exhibit 14 is not in the record on appeal. (See fn. 1, *supra*.) Plaintiffs cite one page in the Clerk's Transcript, which includes a dark photograph of a partially folded paper titled "Notice to Vacate," with a Sheriff's Department heading. Neither the briefs nor the appellate record identify the document as Exhibit 14. It appears that the dates on this document are from April 2018, which is the month the sale agreement was signed. At trial, however, Thompson testified that in response to the notice to vacate in Exhibit 14, he vacated the premises.[3] Thus, the Exhibit 14 Thompson saw at trial must have been a notice to vacate dated after plaintiffs had operated Green Dream for several months—not the notice to vacate in the record dated around the same time as the sale agreement.

---

[3] Attached to plaintiffs' trial brief was an unlawful detainer complaint filed in November 2018. Thus, it appears there were multiple unlawful detainer actions.

17

Plaintiffs have not demonstrated error.  The trial court told plaintiffs it could not read the document and asked plaintiffs to submit a legible copy.  Plaintiffs did not.  The court did not abuse its discretion by declining to admit an illegible exhibit.  Moreover, even if excluding the evidence was error, it could not be prejudicial; an illegible exhibit could not support plaintiffs' case.

In sum, plaintiffs have not demonstrated that the trial court erred in finding in favor of defendants at trial.

## DISPOSITION

The judgment is affirmed.  Defendants are entitled to their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:



CURREY, P.J.



MORI, J.


18